Steven T. Waterman (#6-2636)
Brett L. Foster (*pro hac vice* forthcoming)
Mark A. Miller (*pro hac vice* forthcoming)
Dorsey & Whitney LLP
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
waterman.steven@dorsey.com
foster.brett@dorsey.com
miller.mark@dorsey.com

Caitlin L.D. Hull (*pro hac vice* forthcoming)
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868
hull.caitlin@dorsey.com

*Attorneys for Plaintiffs Ramaco Carbon, LLC and Ramaco Resources, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| RAMACO CARBON, LLC and RAMACO RESOURCES, INC.,<br><br>        Plaintiffs,<br><br>vs.<br><br>ALEX J. MOYES,<br><br>        Defendant. | Case No. 1:26-cv-104<br><br><br>**COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)** |

Plaintiffs Ramaco Carbon, LLC and Ramaco Resources, Inc. (together, "Ramaco"), for its

Complaint against Defendant Alex J. Moyes ("Defendant" or "Moyes"), hereby allege as follows:

1

4916-4611-7266\

## INTRODUCTION

1.      On July 11, 2025, Ramaco, an established mine operator and developer, hosted a widely publicized groundbreaking event at the Brook Mine in Sheridan County launching the first rare earth elements and critical minerals ("REE") mine in the United States in over 70 years. The Brook Mine will create jobs for Wyoming residents and provide the State of Wyoming with severance tax revenue.

2.      Because REE are highly valuable elements and minerals with extensive commercial and military uses, companies spend millions of dollars to develop the best method of identifying, analyzing, extracting, processing, and commercializing REE.

3.      In pursuing REE exploration and planning for the Brook Mine (the "Brook Mine REE Project"), Ramaco generated highly valued trade secrets that include significant quantities of intellectual property, confidential geological data, technical process flowsheets, financial models and proprietary information created both independently and under joint Cooperative Research and Development Agreements ("CRADAs") between Ramaco and federally funded United States Government labs.

4.      This case arises from Defendant's misappropriation of these trade secrets from Ramaco, including but not limited to highly confidential and proprietary geological data and technical and commercial processes for the discovery, mining, processing, and sale of REE.

5.      Defendant, as an employee of Ramaco, entered into confidentiality agreements relating to the trade secrets and intellectual property of Ramaco.

6.      In violation of his confidentiality obligations, Defendant began systematically misappropriating Ramaco's trade secrets and confidential information in the months and days leading up to his voluntary resignation from Ramaco.

4916-4611-7266\

7.      As explained below, Defendant's misappropriation targeted critical parts of Ramaco's business, including both geological data (through the exfiltration of a drill hole database, proprietary assaying procedures, techniques, instrumentation used, detection, limits, quality assurance, and control procedures, and other materials) and process information for commercialization and pilot plants (through the exfiltration of process and flowsheet documentation, plant throughput and production scenarios, and other information).

8.      These trade secrets are highly confidential and have significant commercial and strategic value for Ramaco, both in connection with the Brook Mine Project and other potential REE projects, while also providing significant value to national security and military endeavors.

9.      On information and belief, Defendant may have provided those trade secrets and confidential information to others in the industry, including USA Rare Earth, Inc. ("USAR"), his current employer and a direct competitor of Ramaco.

10.     On information and belief, the end result is that—in an industry with very few players—Defendant's unlawful misappropriation of Ramaco's trade secrets may have provided USAR the ability to rapidly expedite its market entry without investing the time and resources to develop the trade secrets needed to do so.

11.     Ramaco brings this action for damages and to preliminarily and permanently enjoin Defendant from possessing, disclosing and using Ramaco's trade secrets.

## **PARTIES**

12.     Plaintiff Ramaco Carbon, LLC is a limited liability company organized under the laws of the state of Wyoming with its principal place of business at 74 Kleenburn Rd, Ranchester, Wyoming 82839, which is near the Brook Mine. Ramaco Carbon, LLC is a wholly-owned subsidiary of Ramaco Resources, Inc.

4916-4611-7266\

13.     Plaintiff Ramaco Resources, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 250 West Main Street, Suite 1900, Lexington, KY 40507.

14.     On information and belief, Defendant Alex J. Moyes is a citizen-resident of the state of Wyoming and resides at 31 Heather Hill Lane, Sheridan, WY 82801. Defendant was employed by Ramaco as the Director of Critical Minerals and Planning from January 19, 2024 to October 10, 2025.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Ramaco's claims that arise under the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq.* This Court has supplemental jurisdiction over Ramaco's other claims under Wyoming law pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy.

16.     This Court has personal jurisdiction over Defendant because he is a resident of the state of Wyoming and this District.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND

### I.     RAMACO & ITS REE TRADE SECRETS

18.     Ramaco was founded in 2015[1] and currently operates metallurgical coal and mineral development projects in West Virginia, Virginia, and Wyoming.

---

[1]     Ramaco LLC was founded in 2011 as a coal reserve, acquisition and development company. Ramaco Resources, Inc. was spun out of Ramaco LLC in 2015 to be a metallurgical coal operating company.

4916-4611-7266\

19.     Ramaco has long worked with the U.S. Department of Energy's National Energy Technology Laboratory ("NETL") and Oak Ridge National Laboratory ("ORNL") in connection with its mining exploration and operations.

20.     In 2018, Ramaco and NETL discovered a significant unconventional (*i.e.*, coal-based) REE deposit at Ramaco's Brook Mine, which is located near Sheridan, Wyoming. Conventional (*i.e.*, hard rock-based) REE deposits are found in well-understood geological formations where the REE deposits are within the bedrock and can be mined and extracted using conventional methods. In contrast, the REE deposits discovered at Brook Mine are found in the carbonaceous ore and associated strata above and beneath the thermal coal deposit. At the time of this discovery in 2018, there were no known extraction and processing of REE from this type of deposit in the United States.

21.     Subsequent exploration and research revealed that the Brook Mine may be one of the largest, if not the largest, unconventional rare earth deposits in the United States.

22.     Since this discovery, Ramaco has invested substantial time and resources developing trade secrets related to the discovery, mining, and processing of REE, including both gathering highly-valuable data sets and developing new geological, technical, and commercial processes and methods to successfully extract and process REE, including Scandium (Sc), Germanium (Ge), and Gallium (Ga), which are used in connection with hypersonic missiles, military aircraft, and 6G drones, along with many other electronic devices.

23.     This is a complicated and lengthy research and development process that involves precisely defining and determining the targeted ore resource (*i.e.*, REE) by using inductively coupled plasma and mass spectrometry ("ICP-MS") and x-ray refraction ("XRF") analytical systems, followed by extensive experimentation to determine the appropriate proportions of

different elements and reagents necessary to liberate each element and mineral from its constituent host mineralogy in a commercially reasonable scenario.

24.    Ramaco spends millions of dollars to develop sensitive trade secret information that can be used to identify, analyze, extract, and commercialize REE.

25.    The data and processes comprising the highly confidential trade secrets maintained by Ramaco include but are not limited to:

      a.    **Geology information**, including information related to: host and waste rock mineralization and lithology descriptions; drill hole database (including special coordinates, assays, and lithological data); resource block model input files and estimation methods; geological shapes and interpretations of contained mineralized zones in proximity to coal seams; analytical procedures for the use of portable XRF analytical procedures that proxy critical mineral grade; proprietary assaying procedures, techniques, instrumentation used, detection, limits, quality assurance, and control procedures; and mine planning and mine scheduling;

      b.    **Process information for commercial and pilot plants**, including information related to: process and flowsheet development (including the configuration of unit operations); alternative flowsheets considered for the Brook Mine; process flow diagrams and process descriptions; plant throughput and production scenarios; geo-metallurgical relationships that provide correlations between geological domains and metallurgical response; purpose and conditions for pretreatment and leaching, purification, and separation method; equipment configuration, sizing, and

vendor selections; mass and energy balances; simulations; and lists of reagents and their unit pricing and quantities;

    c.    **Economic and commercial analysis**, including analyses and information concerning the economic and commercial viability of various REE processes;

    d.    **Product specifications and information**, including information and specifications, projected quantities, and intended purity mix for various REE products;

    e.    **Capital and expense analysis**, including analyses of capital requirements for commercial and pilot plants and operating expenses;

    f.    **Customer information**, including information related to potential customers or off-takers for various REE products;

    g.    **Pricing and demand forecasts**; and

    h.    **Financial models**.

26.    Over the past six years, Ramaco spent millions of dollars to refine its REE data and processes, and in so doing, has developed what is believed to be the world's most extensive database of ICP-MS and XRF data for a new REE deposit, with more than 6,000 unique ICP-MS test results. In addition, Ramaco has invested heavily in developing economic models and processes to ensure the viability of its REE operations.

27.    Ramaco's REE-related technical data and processes that it has developed are valuable trade secrets and intellectual property that give Ramaco advantages over its competitors.

28.    Recognizing the value of these trade secrets, Ramaco takes significant measures to protect this information through both practice and policy.

29.    Ramaco's physical location in Sheridan County is equipped with security cameras and alarm systems.

30.    Ramaco imposes confidentiality obligations on its employees via the company Code of Conduct that every employee is required to sign.

31.    Ramaco's electronic trade secret intellectual property is stored in a secure cloud-based environment that is password-protected and only accessible on a need-to-know basis for select employees with pre-approved individual access credentials. Access to and downloads from this secure file storage are logged by Ramaco.

II.    **RAMACO'S EMPLOYMENT OF DEFENDANT**

32.    By May 2023, Ramaco announced the discovery of significant deposits of REEs at its Brook Mine. Thereafter, Ramaco pursued its Brook Mine Rare Earths Elements Project ("Brook Mine REE Project") by conducting additional exploratory drilling and metallurgical testing to support the development of a technically and economically feasible REE process at the Brook Mine.

33.    In January 2024, Ramaco hired Defendant as Director of Critical Minerals and Planning. In this role, Defendant was expected to oversee the Brook Mine REE Project.

34.    Although Defendant had no direct experience or expertise in processing REEs, Ramaco hired Defendant as the first geologist to manage the geological and chemical assessment of REE at the Brook Mine and to oversee the Company's expanding REE operations at Ramaco's iCAM Research Center in Sheridan County.

35.    To fulfill his obligations, Defendant understood that Ramaco would provide him with access to highly sensitive, confidential intellectual property and trade secret information, and that such information was to be used solely for Ramaco business purposes.

8

36.    Before hiring Defendant and providing access to this information, Ramaco conducted a background check on Defendant, which he passed.

37.    In addition, Ramaco and Defendant executed a Nondisclosure Agreement (the "NDA") in December 2023, which broadly defined "Confidential Information" and prohibited the disclosure of any confidential information to third parties for the duration of the agreement:

> "Confidential Information" means any and all technical and non-technical information including, but not limited to, patent, copyright, trade secret, and proprietary information; concepts, ideas, techniques, sketches, drawings, documents, models, inventions, know-how, processes, apparatus, equipment, algorithms, data, software programs, software source documents, and formulae; information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing, manufacturing, customer lists, business forecasts, sales and merchandising, and marketing plans and information; or copies of any of the above disclosed to receiving Party/Parties, directly or indirectly, at any time on or after Effective Date. Confidential Information also includes proprietary or confidential information of any third party who may disclose such information to a Party in the course of the other Party's/Parties' business.
>
> . . .
>
> The receiving Party shall not disclose the other Party's Confidential Information to any third Party without the disclosing Party's prior written consent, provided, that the receiving Party may disclose Confidential Information to its Representatives who need to know such Confidential Information for the purpose of evaluating the Purpose on the receiving Party's behalf if prior to providing such Representatives with such Confidential Information the receiving Party advises the Representatives of the confidential nature of the information so provided and of the terms of this Agreement, and such Representatives agree to maintain such Confidential Information in accordance with the terms of this Agreement and to otherwise observe the terms and conditions of this Agreement. The receiving Party acknowledges that it will be responsible for any breach of this Agreement by its Representatives.

4916-4611-7266\

38.    In accepting Ramaco's offer of employment, Defendant signed Ramaco's Offer Letter, thereby indicating that he "agreed and accepted" its terms, which included the following provision:

> You acknowledge that upon acceptance of your employment with Ramaco that you will have access to trade secrets and other confidential information of Ramaco and its affiliates. Accordingly, you agree that you will not, at any time, disclose to others, or use for your benefit or the benefit of others, any such trade secrets or other confidential information and that you will sign Ramaco's standard form of confidentiality agreement.

39.    Defendant also signed an acknowledgement of Ramaco's Code of Conduct, which also requires Defendant to maintain the confidentiality of Ramaco's trade secrets:

> Directors, officers and other employees shall maintain the confidentiality of information entrusted to them by the Company or its customers, except when disclosure is authorized or legally mandated. Confidential information includes all non-public information that, if disclosed, might be of use to competitors or harmful to the Company or its customers. . . . The obligation to preserve confidential information continues even after employment or agency with the Company ends. Any documents, papers, records, or other tangible items that contain trade secrets or proprietary information are the Company's property.

40.    Throughout his employment with Ramaco, Defendant was entrusted with using Ramaco's trade secrets to carry out Ramaco's legitimate business interests, and he also knew that he was obligated to perform such duties in a manner that would carefully protect such trade secrets from disclosure.

## III.    THE BROOK MINE REE PROJECT

41.    Defendant was significantly involved in all aspects of the Brook Mine REE Project, including geological modeling, financial modeling, mining activity, and the development of project flow sheets that would facilitate the successful processing of REEs extracted from the Brook Mine.

42.     In fall 2024, Ramaco engaged Fluor Enterprises, Inc. ("Fluor") to conduct a Preliminary Economic Assessment ("PEA") to evaluate both the technical and economic feasibility of the Brook Mine REE Project. The technical services agreement between Ramaco and Fluor acknowledged that each party would continue to retain its own intellectual property predating the engagement, and that Ramaco would own all reports, designs, charts, plans, and documentation created by Fluor as a result of the services rendered under the agreement.

43.     Defendant worked directly and extensively with Fluor personnel to develop the PEA for the Brook Mine, including development of the technical feasibility models (the "process flowsheets") and the financial models for the Brook Mine REE Project, which were used to confirm the technical and economic feasibility of the project.

44.     After months of extensive work and collaboration with Defendant and other Ramaco employees, Fluor issued the Brook Mine Rare Earth Project Preliminary Economic Assessment (PEA) Report on July 7, 2025 (the "Fluor PEA Report").

45.     The Fluor PEA Report concluded that the Brook Mine REE Project is both technically and economically feasible and outlined highly confidential technical and economic models to support its conclusions. The technical and economic models and processes reflected in the Fluor PEA Report are highly sensitive trade secrets owned by Ramaco that give Ramaco advantages over its competitors.

46.     On July 9, 2025, Ramaco publicly released a summary of the Fluor PEA Report (the "PEA Report Summary"), which included a high-level summary of the Brook Mine REE Project and the Fluor PEA Report's positive conclusion but affirmatively *removed* or *redacted* Ramaco's sensitive technical and financial trade secrets from the Fluor PEA Report.

47.    Ramaco's many years of substantial investment in extensive research and trade secret development in REE deposit identification, analytical methods, and extraction technologies, as well as commercial and financial planning and analysis, facilitated Ramaco's ability to initiate active mining in June, 2025 and host a ceremonial groundbreaking event at the Brook Mine on July 11, 2025.

48.    The Brook Mine is the first new REE mine to launch in the United States in more than 70 years.

49.    On July 11, 2025, Ramaco hosted a widely-publicized groundbreaking event for the Brook Mine Project. The event was well attended by top government officials, including the U.S. Secretary of Energy Chris Wright, Wyoming Governor Mark Gordon, and the entire Wyoming congressional delegation.

50.    Following the groundbreaking, Ramaco initiated construction of a pilot processing facility at the Brook Mine to support the Brook Mine REE Project.

51.    Active mining at the Brook Mine has produced representative ore material for pilot-scale testing of the feedstock with the goal of ultimately establishing REE mineral reserves and resources for processing at a full-scale commercial processing facility.

52.    Because Defendant was at the center of the Brook Mine REE Project and the development of the Fluor PEA Report, he had intimate knowledge of and access to some of Ramaco's most valuable trade secrets during his tenure at Ramaco, including the Fluor PEA Report.

IV.    **DEFENDANT'S RESIGNATION FROM RAMACO & TRANSITION TO USAR**

53.    On September 25, 2025, Defendant gave Ramaco notice that he would be voluntarily resigning from his position. Defendant falsely represented to Ramaco leadership that he was leaving for personal reasons and had no plans for future employment.

12

54.     On October 6, 2025, Ramaco emailed Defendant a letter dated October 10, 2025 (the final day of Defendant's employment with Ramaco) that reminded him of the confidentiality obligations he accepted via his onboarding documents, the NDA, and the Code of Conduct. In addition, the letter asked Defendant to sign the letter confirming that he understands his ongoing confidentiality obligations to Ramaco.

55.     Defendant did not sign the confirmation letter, stating that he considered the letter unnecessary and assuring Ramaco that he remained "fully committed to maintaining the confidentiality of Ramaco's proprietary information."

56.     On October 10, 2025, Defendant terminated his employment with Ramaco. On that day, Defendant again falsely represented to Ramaco's leadership that he had no future employment plans or intention to join a competitor.

## V.     DEFENDANT'S MISAPPROPRIATION OF RAMACO TRADE SECRETS

57.     Less than three weeks after leaving Ramaco, on October 29, 2025, USAR publicly announced that Defendant had been hired as its Vice President of Mining and would lead its mining operations and development and extraction planning of USAR's REE project at Round Top Mine in Texas, where he would be responsible for "developing new methods for exploration, extraction, and processing of rare earth elements."

58.     USAR is a competitor of Ramaco that owns a development-stage potential REE operation in Texas, with related pilot processing laboratories under development in Colorado.

59.     Defendant never disclosed to Ramaco's leadership that he was considering employment with USAR, which Defendant knew was a direct competitor of Ramaco.

60.     Upon seeing USAR's public announcement about Defendant's hiring, Ramaco became concerned about the security of its trade secrets due to Defendant's intimate access to

4916-4611-7266\

Ramaco's trade secret information. This concern was heightened due to Defendant's deceptiveness about his post-resignation plans.

61.     Accordingly, Ramaco undertook a forensic investigation of its computer systems and data, during which it discovered dozens of emails that Defendant had been sending from his Ramaco email account with attachments containing Ramaco's trade secrets to his personal email account during the final months of his employment with Ramaco.

62.     Specifically, on July 8, 2025—the day after Ramaco received the Fluor PEA Report and only three days before the Brook Mine groundbreaking—USAR sent Defendant a confidentiality agreement that covered "discussions relating to a potential role or engagement." Defendant promptly forwarded the email and the attached confidentiality agreement to his personal email.

63.     On information and belief, Defendant presumably had been communicating with USAR prior to his receipt of USAR's July 8 email and continued to do so thereafter via his personal devices and accounts.

64.     Defendant's engagement with USAR and his failure to disclose said discussions to Ramaco violated Defendant's contractual non-disclosure obligations to Ramaco, and likewise violated the obligations set forth in Ramaco's Code of Conduct, which prohibits employees from engaging with competitors in a way that creates an actual or potential conflict of interest and also obligates employees to report any actual or potential conflicts.

65.     In addition, Ramaco's further investigation revealed that Defendant had sent emails including highly sensitive reports, data, and information containing Ramaco's confidential trade secrets to his personal email address, which would allow Defendant to continue accessing the information even after his resignation.

14

66.    Ramaco's highly sensitive, proprietary, and confidential trade secret information Defendant sent to his personal email address included:

  a. On August 13, 2025, Defendant sent an email to his personal email account concerning a "Test plan," which attached a copy of a spreadsheet titled "Ramaco Test work Proposal Block Flows_Fluor_0825.xlsx." This file is a very detailed spreadsheet containing highly confidential results from a variety of different tests Ramaco performed. This testing data was used by Ramaco and Fluor to create the trade secret flow process spelled out in the Fluor PEA Report.

  b. On August 27, 2025, Defendant sent an email about "Expansion scenarios" to his personal email account, which attached a copy of a spreadsheet titled "Upsize Case_MW-CB edits_R1.xlsx." This spreadsheet included highly confidential modeling of different use and scaling scenarios for the Brook Mine based on the technical and economic models developed in the Fluor PEA Report.

  c. On September 8, 2025, Defendant sent an email about "Models Attachments" to his personal email account, which attached two spreadsheets titled "NEW_BROOK MINE_TEA_SIMPLE_AJM_ 063025_ONE_BASKET_MULTI_LEACH.xlsm" and "Fluor Brook Model_Apr PEA Financial Model_REV_H JS v12_AJM.xlsm." These spreadsheets contain extensive technical process data and economic data effectively covering every aspect of Ramaco's plans for the Brook Mine

REE Project and further development of the models provided in the Fluor PEA Report.

d.    Perhaps most concerning, on October 10, 2025—his last day of employment and after acknowledging his ongoing confidentiality obligations to Ramaco, Defendant forwarded a complete copy of the Brook Mine PEA (file name: PEA Report B1RC-PM-REP-0003 GV2501081.pdf) which Defendant had previously described in an earlier email in the chain as "***contain[ing] highly sensitive and confidential information***." (emphasis in original).

67.    Defendant lacked any authorization or legitimate purpose for forwarding these trade secret materials to his personal email address.

68.    Upon information and belief, Defendant may have shared the trade secret information he misappropriated from Ramaco with USAR, either directly or indirectly, and Defendant may have been using the trade secret information to benefit his new employer, and Ramaco's competitor, USAR.

69.    Defendant later solicited another former Ramaco employee, Adam Nawacki, to resign from Ramaco and begin working at USAR.

## VI.    IRREPARABLE HARM CAUSED BY DEFENDANT'S MISAPPROPRIATION

70.    Ramaco has been and will continue to be irreparably harmed by Defendant's illegal actions.

71.    Ramaco's early and successful efforts in the REE space—including through Ramaco's long-time, strategic partnership with the United States government via multiple U.S. Department of Energy national laboratories—places Ramaco years ahead of any other competitor, including USAR, in being able to mine REE from unconventional REE deposits in a way that is both technically and economically viable.

16

72.     On October 30, 2025, due to the extensive investment into developing Ramaco's highly confidential process flowsheets and economic models for mining REE at the Brook Mine, Ramaco re-entered into a CRADA with NETL, marking a significant milestone in Ramaco's longstanding partnership with NETL and collaborative research on REE exploration, processing, ore deposit modeling, and commercialization strategies.

73.     Ramaco is in the unique and advantageous position to acquire necessary funding and investment to expand and deploy its technology not only at the Brook Mine in Sheridan County, but at other coal deposit operations around the country, and even internationally.

74.     The information Defendant misappropriated from Ramaco regarding Ramaco's years of exploration and testing to evaluate the feasibility of REE mining at the Brook Mine, including the testing data, reports, flowsheet processes, and economic modeling, represent millions of dollars of investment over many years. This information is the foundation of Ramaco's strong, industry-leading position in the new REE marketplace in which the United States government has recently prioritized REE mining domestically.

75.     Ramaco's competitive position could be significantly impaired if Ramaco's confidential and trade secret REE processing information and economic models fall into the hands of its competitors, including USAR. Such an event would erode Ramaco's leading market position in the unconventional REE mining space that derives from the large investment of time, money and resources made over the past several years to get to this point.

76.     Less than two months after hiring Defendant, on December 10, 2025, USAR publicly announced an accelerated schedule for commercial production of REE "in late 2028, two years earlier than previously anticipated." USAR further explained that this acceleration was based upon its expectation that it would "begin operating its Hydromet demonstration facility in

17

Colorado early in 2026, based on the promising results of its *recent* and ongoing SX piloting."
(emphasis added).

77.    On information and belief, Defendant may have used Ramaco's trade secrets to USAR's benefit contributing to this accelerated timeline, which trade secrets included proprietary and secret information about Ramaco's own hydromet and solvent extraction system for the Brook Mine.

78.    USAR's ability to accelerate its planned REE operations positioned USAR to attract private and governmental financial investments and opportunities. On January 27, 2026, USAR announced it has received a $1.6 billion funding agreement from the United States government and a separate $1.5 billion from private sector investment.

79.    Any diversion of investments resulting from a competitor's use of Ramaco's trade secrets could diminish Ramaco's ability to conduct research and development and cause Ramaco to lose business and investment opportunities, the long-term consequences of which cannot be remedied by monetary damages alone and cannot be adequately quantified.

80.    Defendant's misappropriation of Ramaco's trade secrets threatens the erosion of Ramaco's leading position in the market by potentially allowing a competitor like USAR to enter the market much faster than would otherwise be possible, thereby diverting investment funding and business opportunities away from Ramaco.

81.    Defendant's misappropriation of Ramaco's trade secrets could disrupt Ramaco's important work in collaboration with the U.S. Department of Energy's national labs to mine and develop REE that are vital for the United States' defense, electronics, and energy sectors.

82.    Defendant's misappropriation of Ramaco's trade secrets discourages competition from companies that would otherwise develop operations in the same business.

## FIRST CAUSE OF ACTION

**Misappropriation of Trade Secrets – Defend Trade Secrets Act (DTSA)**
**18 U.S.C. § 1832, *et seq.***

83.    Ramaco realleges the preceding paragraphs as if set forth fully herein.

84.    As a result of his employment with Ramaco, along with his contractual obligations owed to Ramaco through the NDA, the Offer Letter, and the Code of Conduct, Defendant was in a position of trust and responsibility at Ramaco and thus used, received, developed, and had knowledge of Ramaco's trade secrets, including but not limited to highly sensitive and proprietary REE data and process information.

85.    These trade secrets have independent economic value and are not generally known to or readily ascertainable by persons outside of Ramaco and provide Ramaco with an economic and competitive advantage in the marketplace with regard to launching economically and technically viable REE mining operations for unconventional REE deposits.

86.    Ramaco has made and continues to make reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, including by requiring its employees to abide by confidentiality requirements described in the Code of Conduct, NDAs, employment offer letters, and other agreements.

87.    Ramaco limits employee and contractor access to certain highly confidential information by restricting access to limited accounts issued to only those employees that require confidential information to fulfill their job responsibilities.

88.    As described herein, Defendant wrongfully retained, disclosed, and/or used Ramaco's trade secrets without the express or implied consent of Ramaco, for his own benefit and potentially for the benefit of USAR and others through, minimally, the transfer of trade secrets through his personal email account.

89.     The trade secrets Defendant misappropriated relate to Ramaco REE data and processes, which are used in, and intended for use in, interstate commerce in the mining industry.

90.     Defendant's conduct constitutes violations of 18 U.S.C. § 1832 *et seq.*, and his violations were willful and malicious. He knows he has acquired, retained, and/or used Ramaco's trade secrets without authorization to do so.

91.     Defendant's misappropriation of Ramaco's trade secrets has caused and will continue to cause Ramaco irreparable harm, loss, and sustained damages, including without limitation, loss of revenue, valuable business, profits, and goodwill.

92.     Ramaco has been damaged in an amount to be determined at trial and is entitled to its reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

### Misappropriation of Trade Secrets – Wyoming Uniform Trade Secrets Act (WTSA) Wyo. Stat. § 40-24, et seq.

93.     Ramaco realleges the preceding paragraphs as if set forth fully herein.

94.     As a result of his employment with Ramaco, along with his contractual obligations owed to Ramaco through the NDA, the Offer Letter, and the Code of Conduct, Defendant was in a position of trust and responsibility at Ramaco and thus used, received, developed, and had knowledge of Ramaco's trade secrets, including but not limited to highly sensitive and proprietary REE data and process information.

95.     These trade secrets have independent economic value and are not generally known to or readily ascertainable by persons outside of Ramaco and provide Ramaco with an economic and competitive advantage in the marketplace with regard to launching economically and technically viable REE mining operations for unconventional REE deposits.

96.     Ramaco has made and continues to make reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, including by requiring its employees to abide by confidentiality requirements described in the Code of Conduct, NDAs, employment offer letters, and other agreements.

97.     Additionally, Ramaco limits employee and contractor access to certain highly confidential information by restricting access to limited accounts issued to only those employees that require confidential information to fulfill their job responsibilities.

98.     As described herein, Defendant wrongfully retained, disclosed, and/or used Ramaco's trade secrets without the express or implied consent of Ramaco, for his own benefit and potentially for the benefit of USAR and others through, minimally, the transfer of trade secrets through his personal email account.

99.     The trade secrets misappropriated by Defendant relate to Ramaco REE data and processes, which are used in, and intended for use in, interstate commerce in the mining industry.

100.    Defendant's conduct constitutes violations of 18 U.S.C. § 1832 *et seq.*, and his violations were willful and malicious. He knows he has acquired, retained, and/or used Ramaco's trade secrets without authorization to do so.

101.    Defendant's misappropriation of Ramaco's trade secrets has caused and will continue to cause Ramaco irreparable harm, loss, and sustained damages, including without limitation, loss of revenue, valuable business, profits, and goodwill.

102.    Ramaco has been damaged in an amount to be determined at trial and is entitled to its reasonable attorney's fees and costs.

## THIRD CAUSE OF ACTION

### Breach of Contract (Non-Disclosure Agreement)

103.    Ramaco realleges the preceding paragraphs as if set forth fully herein.

104.    The NDA constitutes a valid and enforceable contract executed between Ramaco and Defendant on December 15, 2023.

105.    Under the NDA, Defendant agreed that all confidential information shall not be disclosed for a period of three years following execution of the NDA.

106.    Ramaco performed or offered to perform all of its obligations under the applicable agreements.

107.    Defendant breached his obligations under the NDA for his own personal gain and potentially for the benefit of his new employer by misappropriating, using, and/or disclosing Ramaco's trade secret information, including but not limited to highly sensitive and proprietary REE data and process information.

108.    On information and belief, Defendant's breach was malicious and done with the intent of inflicting competitive harm to Ramaco by giving Ramaco's secrets and confidential information to a competitor and/or using Ramaco's secrets and confidential information to benefit a competitor. Ramaco is thus entitled to punitive damages.

109.    These breaches caused Ramaco irreparable harm and loss, and has sustained damages, including without limitation, loss of revenue, valuable business, profits, and goodwill, in an amount exceeding $75,000.

## FOURTH CAUSE OF ACTION

### Breach of Contract (Employment Offer Letter)

110.    Ramaco realleges the preceding paragraphs as if set forth fully herein.

111.    The Offer Letter constitutes a valid and enforceable contract executed between Ramaco and Defendant on December 23, 2023.

112.    Under the Offer Letter, Defendant agreed that he would not use or disclose to others any trade secrets or other confidential information from Ramaco "at any time."

113.    Ramaco performed all of its obligations under the Offer Letter, including by employing Defendant and paying his compensation and benefits as indicated in the Offer Letter.

114.    Defendant breached his obligations under the Offer Letter for his own personal gain and potentially for the benefit of his new employer by misappropriating, using, and disclosing Ramaco's trade secret information, including but not limited to highly sensitive and proprietary REE data and process information.

115.    On information and belief, Defendant's breach was malicious and done with the intent of inflicting competitive harm to Ramaco by giving Ramaco's secrets and confidential information to a competitor and/or using Ramaco's secrets and confidential information to benefit a competitor. Ramaco is thus entitled to punitive damages.

116.    These breaches caused Ramaco irreparable harm and loss, and has sustained damages, including without limitation, loss of revenue, valuable business, profits, and goodwill, in an amount exceeding $75,000.

## FIFTH CAUSE OF ACTION

### Injunctive Relief

117.    Ramaco realleges the preceding paragraphs as if set forth fully herein.

118.    By virtue of the foregoing, Ramaco has demonstrated that a balancing of the equities favors the issuance of an injunction against Defendant and those acting in concert with him.

119.    Unless Defendant is restrained and enjoined from the foregoing conduct, Ramaco will be irreparably harmed by, among other things:

    a.    The misappropriation of its trade secret information, which is solely the property of Ramaco and which Defendant is contractually and/or legally barred from taking and using without Ramaco's authorization;

4916-4611-7266\

    b.    Loss of financial dealings, loss of confidence and trust, loss of goodwill, and loss of business reputation as a result of Defendant's misappropriation of Ramaco's trade secret information and use of such information to expedite a competitor's research efforts and entrance into the market; and

    c.    Present economic loss that is unascertainable at this time, and future economic loss that is presently incalculable.

120.    Ramaco has no complete and adequate remedy at law.

121.    Ramaco is therefore entitled to an injunction, based on its contractual agreements with Defendant and based upon its other claims herein, enjoining Defendant and all affiliated entities, agents, representatives, employees, attorneys, and other persons acting—or purporting to act—on behalf of each other or in active concert or participation with each other, from retaining, disclosing, or using Ramaco's confidential and trade secret information.

122.    Ramaco is further entitled to an injunction requiring Defendant to return all confidential information or trade secrets to Ramaco; to submit any and all personal and business data-storage devices and systems to forensic examination to confirm that Defendant does not continue to possess or at any point transferred any of Ramaco's confidential or trade secret information; and such other and further relief as may be warranted by information revealed in Ramaco's ongoing investigation and discovery.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs Ramaco Carbon, LLC and Ramaco Resources, Inc., pray for the following relief:

1.    Preliminary and permanent injunctive relief;

2.    Ramaco's compensatory damages in an amount to be determined;

3.    Exemplary and/or punitive damages;

4916-4611-7266\

4.    Ramaco's attorneys' fees and costs in pursuing this action, as allowed under the relevant causes of action; and

5.    Such other relief that the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Ramaco demands a trial by jury.

DATED:  March 16th, 2026                          Respectfully submitted,


                                                  By: */s/ Steven T. Waterman*
                                                  Steven T. Waterman (#6-2636)
                                                  Brett L. Foster (*pro hac vice* forthcoming)
                                                  Mark A. Miller (*pro hac vice* forthcoming)
                                                  Dorsey & Whitney LLP
                                                  111 S. Main Street, Suite 2100
                                                  Salt Lake City, UT 84111
                                                  Telephone:  (801) 933-7360
                                                  Facsimile:  (801) 933-7373
                                                  waterman.steven@dorsey.com
                                                  foster.brett@dorsey.com
                                                  miller.mark@dorsey.com

                                                  Caitlin L.D. Hull (*pro hac vice* forthcoming)
                                                  Dorsey & Whitney LLP
                                                  50 South Sixth Street, Suite 1500
                                                  Minneapolis, MN 55402
                                                  Telephone:  (612) 340-2600
                                                  Facsimile:  (612) 340-2868
                                                  hull.caitlin@dorsey.com

                                                  *Attorneys for Plaintiffs Ramaco Carbon, LLC and Ramaco Resources, Inc.*

4916-4611-7266\